UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

HENRY LACE, on behalf of himself          )
and all others similarly situated,        )
                                          )
         Plaintiffs,                      )
                                          )
              v.                          )    Case No. 3:12-CV-363 JD CAN
                                          )
FORTIS PLASTICS, LLC and                  )
MONOMOY CAPITAL PARTNERS L.P.,            )
                                          )
         Defendants.                      )

## OPINION AND ORDER

This matter is before the Court on a Motion for Class Certification filed by Plaintiff

Henry Lace ("Mr. Lace"). [DE 34, 35.] Defendant Fortis Plastics, LLC ("Fortis"), opposes

certification of the Plaintiff's proposed class and subclass.[1] [DE 43.] Mr. Lace filed a reply in

support of his motion. [DE 48, as corrected at DE 49.] Also pending is a Rule 12(b)(6) Motion

to Dismiss Mr. Lace's Amended Complaint filed by Monomoy. [DE 37, 38.] Mr. Lace filed a

Memorandum in Opposition, [DE 41], and Monomoy filed a Reply in Further Support, [DE 42].

Mr. Lace's Motion for Class Certification and Monomoy's Motion to Dismiss were each filed on

January 25, 2013.

As an initial matter, the Court must determine in which order to rule on the two pending

motions. Rule 23 requires that "at an early practicable time after a person sues or is sued as a

class representative, the court must determine by order whether to certify the action as a class

action." Fed. R. Civ. P. 23(c)(1)(A). While a court sometimes has the discretion to decide a

Rule 12(b)(6) motion before determining whether to certify a putative class, *McReynolds v.*

---

[1] Defendant Monomoy Capital Partners, L.P. ("Monomoy"), reserved the right to join Fortis in opposing the Motion
for Class Certification if its pending Motion to Dismiss was denied. [DE 43 at 1 n.1.] For the reasons stated below,
the Court treats Fortis's opposition as if also joined by Monomoy.

1

*Merrill Lynch & Co., Inc.*, 694 F.3d 873, 879 n.4 (7th Cir. 2012), the Court here determines that

judicial economy is best served by first addressing the question of class certification and then

addressing Monomoy's pending Motion to Dismiss. That ordering is especially appropriate in

this case, where Monomoy's Motion to Dismiss does not attack Mr. Lace individually, but relies

on grounds generally applicable to all members of the putative class.

Accordingly, the Court here addresses Mr. Lace's Motion for Class Certification. The

Court will follow this Opinion and Order shortly with a decision on Monomoy's Motion to

Dismiss.

## I.     FACTS AND PROCEDURAL BACKGROUND

This case arises out of the closure of a plastic components manufacturing facility

previously located on Voorde Drive in South Bend, Indiana (the "South Bend Facility"). What

does not appear to be in dispute is that Mr. Lace worked at the South Bend Facility, along with

approximately 60 to 70 other individuals. In late November or early December 2011, the South

Bend Facility ceased operations. As a result, Mr. Lace and the other employees at the South

Bend Facility lost their jobs.

What is in dispute in this case is (1) which company or companies constituted the

"employer" of Mr. Lace and the other employees at the South Bend Facility and (2) whether the

closing of the South Bend Facility violated the Worker Adjustment and Retraining Notification

Act ("WARN Act"), 29 U.S.C. § 2101, or the Indiana Wage Payment Statute, Ind. Code § 22-2-

5-1.

On June 29, 2012, Mr. Lace filed a Class Action Complaint against Fortis, alleging that

Fortis had failed to provide sufficient notice, as required by the WARN Act before closing the

South Bend Facility. [DE 1.] Mr. Lace sued on his behalf, and on the behalf of "the class of

those similarly situated." [DE 1 at 1.] On November 9, 2012, Mr. Lace filed a First Amended Class Action Complaint in which he added Monomoy as a defendant and alleged that Fortis and Monomoy served as the "single employer" of Mr. Lace and the others working at the South Bend Facility. [DE 24.] Mr. Lace also added a claim for violation of the Indiana Wage Payment Statute. *Id.* Mr. Lace seeks, on behalf of himself and the class, wages and benefits as allowed under the WARN Act and Indiana Wage Payment Statute, a declaratory judgment that Fortis and Monomoy wrongfully failed to pay wages and benefits, interest, and attorney fees. [DE 24 at 9–10.]

This Court has jurisdiction over Mr. Lace's WARN Act claim under 28 U.S.C. § 1331. Mr. Lace alleges no basis for jurisdiction over his claim arising under the Indiana Wage Payment Statute. However, neither Defendant argues that the Court lacks jurisdiction and, based on the information currently before the Court, it appears that jurisdiction over that claim is proper under 28 U.S.C. § 1367.

## II.    ANALYSIS

Rule 23 of the Federal Rules of Civil Procedure governs the certification of class actions in federal court. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2548 (2011). Rule 23(a) ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate. *Id.* at 2550. The Rule's four requirements—numerosity, commonality, typicality, and adequacy—effectively limit the class claims to those fairly encompassed by the named plaintiff's claims. *Id.* (citations and internal quotations omitted). If all of these prerequisites are met, a court must also find that at least one of the subsections of Rule 23(b) is satisfied. In this case, Mr. Lace seeks class certification under Rule 23(b)(2) and Rule 23(b)(3). Rule 23(b)(2) applies when "the party opposing the class has acted or refused to act on grounds

that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Rule 23(b)(3) applies when "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." "Failure to meet any of the Rule's requirements precludes class certification." *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008). The Plaintiff, as the party seeking class certification, assumes the burden of demonstrating that certification is appropriate. *Trotter v. Klincar*, 748 F.2d 1177, 1184 (7th Cir. 1984); *Dukes,* 131 S. Ct. at 2551 ("A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc.").

A district court has broad discretion to determine whether certification of a class action lawsuit is appropriate. *Arreola*, 546 F.3d at 794. The United States Supreme Court has made clear, however, that the district court is to perform a "rigorous analysis" to determine that the prerequisites of Rule 23 are satisfied when a class is to be certified because actual, not presumed, conformance with Rule 23(a) remains indispensable. *Dukes*, 131 S. Ct. at 2551–52 (citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160–61 (1982)). Frequently, that "rigorous analysis" will entail some overlap with the merits of the plaintiff's underlying claim, and this cannot be helped. *Id.* (noting that sometimes *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974) is mistakenly cited for the proposition that the merits of the claims for relief may not be considered in adjudicating the motion for class certification, and clarifying that such a proposition is "the purest dictum and is contradicted by other cases"). The purpose of the "rigorous analysis" is not to test the merits of the claim, however, but to determine whether the claim meets the requirements of Rule 23(a). *See Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 677 (7th Cir.

2001). "In conducting this analysis, the court should not turn the class certification proceedings into a dress rehearsal for the trial on the merits." *Messner v. Northshore Univ. Healthsys.*, 669 F.3d 802, 811 (7th Cir. 2012). However, "[i]f there are material factual disputes, the court must 'receive evidence . . . and resolve the disputes before deciding whether to certify the class.'" *Id.* (alteration in original) (citing *Szabo*, 249 F.3d at 676).

## A.    Nature of the Class Claims

Before the Court can conduct the rigorous analysis of the Rule 23(a) factors, it must first understand what the claims are because some types of claims are more susceptible to class treatment than others. Therefore, the Court will first determine the legal nature of Mr. Lace's claims, before proceeding to determine whether the Rule 23(a) requirements are met and ultimately whether either proposed class should be certified under Rule 23(b)(2) or Rule 23(b)(3).

### 1.    *WARN Act Claim*

Mr. Lace presents a claim on his own behalf, and on the behalf of those similarly situated, for a violation of the WARN Act. The WARN Act requires that certain employers provide sixty days-notice to workers before engaging in a mass layoff or plant closing, as those terms are defined by the statute. 29 U.S.C. § 2012(a). If an employer fails to give notice as required under the WARN Act, any aggrieved employee has the right to sue the employer for back pay and benefits. 29 U.S.C. § 2104.

Mr. Lace asserts his WARN Act claim against two distinct corporate entities, Fortis and Monomoy. His claim against Fortis is fairly straightforward. Fortis does not appear to deny that it employed Mr. Lace or that Mr. Lace is no longer employed by Fortis. Thus, it appears Fortis's liability under the WARN Act will come down to questions of whether it was required to provide

notice under the Act, whether it did so, and if it failed to provide notice whether some statutory defense excuses that lack of notice.

Mr. Lace's more legally complex claim is his claim against Monomoy for a violation of the WARN Act. While the Court at this point makes no determination of the relationship between Mr. Lace and Monomoy, based on the allegations of Mr. Lace's complaint it appears that Monomoy was the sole owner of Fortis and did not directly hire or employ Mr. Lace. Based on regulations issued by the Department of Labor ("DOL"), Mr. Lace argues that Fortis and Monomoy are so interrelated as to constitute his "single employer" under the WARN Act. As will be more fully discussed in the Court's forthcoming ruling on Monomoy's Motion to Dismiss, the Court agrees with the parties that the proper test to be used to determine whether Monomoy is to be held liable under the WARN Act is the multi-factor test promulgated by the DOL.

The DOL regulations state, in part:

Under existing legal rules, independent contractors and subsidiaries which are wholly or partially owned by a parent company are treated as separate employers or as part of the parent or contracting company depending upon the degree of their independence from the parent. Some of the factors to be considered in making this determination are (i) common ownership, (ii) common directors and/or officers, (iii) de facto exercise of control, (iv) unity of personnel policies emanating from a common source, and (v) the dependency of operations.

20 C.F.R. § 639.3(2). These five factors have been commonly applied in federal courts throughout the country in determining any potential liability under the WARN Act to a company closely affiliated with the plaintiff's direct employer. *Childress v. Darby Lumber, Inc.*, 357 F.3d 1000, 1005–07 (9th Cir. 2004) (affirming district court's application of DOL factors in granting summary judgment on issue of "single employer" status); *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 491 (3d Cir. 2001) (affirming district court's grant of summary judgment against lender liability through application of DOL factors); *In re Great Atl. & Pac. Tea Co.*, 467 B.R.

44, 54 (S.D.N.Y. 2012) (collecting cases applying DOL factors to determine affiliated corporate liability); *Blair v. Infineon Technologies AG*, 720 F. Supp. 2d 462, 473–74 (D. Del. 2010) (applying DOL factors in denying motion to dismiss claim that employer and affiliated corporation constituted "single employer"); *Austen v. Catterton Partners V, LP*, 709 F. Supp. 2d 168, 173–78 (D. Conn. 2010) (same); *Vogt v. Greenmarine Holding, LLC*, 318 F. Supp. 2d 136, 141–45 (S.D.N.Y. 2004) (same). The numerated factors are not elements that need each be proved, but rather are components of a balancing test that the Court weighs to determine whether Monomoy should be held liable for any failure to provide notice under the WARN Act. *Vogt*, 318 F. Supp. 2d at 142.

Once it is determined who employed Mr. Lace and the other employees at the South Bend Facility, the fired employees must also establish that the employer is covered by the WARN Act by having the requisite number of employees, 29 U.S.C. § 2101(a)(1), that a plant closing or mass layoff occurred, § 2101(a)(2)–(3), and that the required notice was not provided to the employees, § 2102(a). The WARN Act indicates that class treatment may be appropriate in this type of litigation, providing that a person may sue "for other persons similarly situated." § 2104(a)(5).

>    2.    *Indiana Wage Payment Statute Claim*

Mr. Lace also raises an Indiana state law claim against both Fortis and Monomoy for violation of the Indiana Wage Payment Statute, Ind. Code § 22-2-5-1. In this claim, Mr. Lace alleges that he and others were owed accrued vacation time at the time of their termination, but that Fortis and Monomoy failed to pay that accrued time.

The Court has serious concerns about whether Mr. Lace's Indiana Wage Payment Statute claim states a valid claim against either Fortis or Monomoy. The Indiana Wage Payment Statute provides for the frequency and amount an Indiana employer must pay its employee. *St. Vincent*

*Hosp. & Health Care Ctr., Inc. v. Steele*, 766 N.E.2d 699, 703 (Ind. 2002). However, the Indiana Wage Payment Statute applies only to current employees or former employees who have voluntarily left their employment. *Id.* at 705. By contrast, the Indiana Wage Claims Statute, Ind. Code § 22-2-9-1, allows employees who have been terminated to seek payment for wages owed them by their previous employer. *Id.* Former employees who seek payment under the Indiana Wage Claims Statute may not file a complaint in court, but must submit their claim to the Indiana Department of Labor. *Id.* In turn, the Department of Labor may hear evidence and take assignments of certain wage claims, referring them to the Attorney General for initiation of suit. *Id.*

It is not clear on the record before the Court whether Mr. Lace or any other members of the purported class utilized any remedies through the Indiana Department of Labor. What seems clear is that Mr. Lace, through his own pleadings, has shown that he did not voluntarily separate from his prior employment at the South Bend Facility.

However, the strength of Mr. Lace's Indiana Wage Payment Statute claim is not the focus of the Court's decision on class certification. Further, Fortis did not move to dismiss that claim of Mr. Lace's Amended Complaint and none of the issues identified above by the Court were addressed in Monomoy's Motion to Dismiss. Accordingly, the Court will consider the claim as it currently stands, determining whether the claim is suitable for class treatment.

**B.      Class Certification**

Rule 23(a) sets four requirements: numerosity, commonality, typicality, and adequacy of representation. "A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Dukes,* 131 S. Ct. at 2551. Further, as discussed above, the Court is to perform a "rigorous analysis" to determine that the prerequisites

of Rule 23 are satisfied when a class is to be certified because actual, not presumed, conformance with Rule 23(a) remains indispensable. *Id.* at 2551–52 (citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160–61 (1982)). Frequently, that "rigorous analysis" will entail some overlap with the merits of the plaintiff's underlying claim, and this cannot be helped. *Id.* A district court has broad discretion to determine whether certification of a class action lawsuit is appropriate. *Arreola*, 546 F.3d at 794.

Here, Mr. Lace seeks to certify two classes. First, Mr. Lace seeks to certify the following class (the "Proposed Class"):

> All persons who worked at or reported to defendants' South Bend Facility and were terminated without cause on or about December 1, 2011, within 30 days of December 1, 2011, or in anticipation of, or as the foreseeable consequence of, the plant closing ordered by defendants on or about December 1, 2011, and who are affected employees within the meaning of 29 U.S.C. § 2101(a)(5), and who have not filed a timely request to opt-out of the class.

[DE 35 at 2.] Additionally, Mr. Lace seeks to certify the following subclass (the "Proposed Subclass"):

> All persons who worked at or reported to defendants' South Bend Facility and were terminated without cause on or about December 1, 2011, within 30 days of December 1, 2011, or in anticipation of, or as the foreseeable consequence of, the plant closing ordered by defendants on or about December 1, 2011, and who were owed payment of accrued vacation time under Ind. Code § 22-2-5-1 upon their termination by defendants, and who have not filed a timely request to opt-out of the class.

[DE 35 at 2.] In order for the Court to certify the Proposed Class or the Proposed Subclass, Mr. Lace must establish that each of the four Rule 23(a) elements has been met and that at least one of the Rule 23(b) elements has been satisfied. Accordingly, the Court now turns to examine both the Proposed Class and Proposed Subclass under the 23(a) elements.

The first requirement under Rule 23(a) is that the purported class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). To be impracticable, joinder need not be impossible, but instead must be shown to be inconvenient and difficult. *See Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993); *Gomez v. Illinois State Bd. of Ed.*, 117 F.R.D. 394, 398–99 (N.D. Ill. 1987). When determining if joinder of all class members is impracticable, courts often consider many factors, including: the class size; judicial economy arising from the avoidance of a multiplicity of actions; the ease of identification of members of the proposed class; the geographic dispersion of class members; the size of each plaintiff's claim; the financial resources of the class members; the ability of claimants to institute individual suits; any requests for prospective injunctive relief which would involve future class members; and any other factors relevant to the practicability of joining all the class members. Alba Conte & Herbert Newberg, *Newberg on Class Actions* § 3:6 (2002 & Supp. 2011); *see also Gomez*, 117 F.R.D. at 399 (listing some similar factors). "Mere speculation" and "conclusory allegations" of the class size will not support a finding that joinder is impractical. *Arreola*, 546 F.3d at 797; *Marcial v. Coronet Ins. Co.*, 880 F.2d 954, 957 (7th Cir. 1989). A court must rely on simple common sense when determining whether a class size meets the numerosity requirement. *See Flood v. Dominguez,* 270 F.R.D. 413, 417 (N.D. Ind. 2010) (citing *Redmon v. Uncle Julio's of Ill., Inc.*, 249 F.R.D. 290, 294 (N.D. Ill. 2008)).

With respect to the Proposed Class, Mr. Lace asserts in his Amended Complaint that although the exact number of individuals working at the South Bend Facility at the time of its closure is not certain, there were approximately 63 people working at the plant at the time it closed. [DE 24 at ¶¶ 12, 16.] To support this allegation in his class certification motion, Mr. Lace cited Fortis's answer to Mr. Lace's original complaint, in which Fortis admitted that

approximately 63 people worked at the South Bend facility in late November 2011. [DE 35 at 4, citing DE 9 at ¶ 6.] In its response, Fortis argued that Mr. Lace did not provide sufficient detail regarding the size of the Proposed Class. [DE 43 at 5.]

Though the parties argue over whether Fortis's original answer, which has been superseded by Fortis's answer to Mr. Lace's amended complaint,[2] constitutes an admission worthy of invoking judicial estoppel, the Court need not consider that issue for the purpose of deciding class certification. This is because Mr. Lace offered additional evidence accompanying his reply brief which provides sufficient information regarding the size of the Proposed Class to satisfy his level of proof with respect to numerosity. Namely, Mr. Lace provides and cites in his reply a notice letter sent by Fortis to the Indiana Department of Workforce Development regarding the closure of the plant at issue in this case. [DE 49 at 3.] The letter states "There are currently seventy-one (71) employees, including two (2) temporary employees, working at the South Bend facility, all of whom will be separated during the fourteen (14) day period noted above." [DE 48-1 at 3.]

This evidence alone is sufficient to convince the Court that numerosity exists as to the Proposed Class. Whether a class of 63 or 71—as suggested by Mr. Lace and the contemporary documentation, respectively—the number of potential class members, as well as the judicial inefficiency of attempting to try a case with so many individual plaintiffs, convinces the Court that the class is so numerous as to make joinder impracticable.

With respect to the Proposed Subclass, however, the evidence is not currently sufficient to establish numerosity. Mr. Lace makes no allegation in his amended complaint regarding the number of workers to whom accrued vacation pay is allegedly owed. Similarly, in his motion for

---

[2] Fortis's answer to Mr. Lace's amended complaint denies the allegations regarding the number of individuals employed by "Defendants" as opposed to Fortis specifically. [DE 36 at ¶ 12.]

class certification, Mr. Lace states "Of the approximately 63 members of the class, it is believed that many were owed accrued vacation time when they were terminated."  [DE 35 at 4.]

Additionally, the Court has serious concerns about whether the number of class members can even be determined based on the definition provided for the Proposed Subclass.  The definition of the Proposed Subclass contains a legal conclusion, in that the class is limited to persons "who were owed payment of accrued vacation time under Ind. Code § 22-2-5-1 upon their termination by defendants."  [DE 35 at 2.]  The determination of the number of members of the class thus depends on the final legal determination of whether a person is owed accrued vacation pay under the Indiana Wage Payment Law.  This results in the kind of "fail-safe" class where class membership hinges on the ability of the class to succeed on the merits.  *See Ostler v. Level 3 Commc'ns, Inc.*, No. IP 00-0718-C H/K, 2002 WL 31040337, at *2 (S.D. Ind. Aug. 27, 2002) (collecting cases denying certification where final resolution of claim necessary to determine class membership).[3]

Accordingly, the Proposed Subclass does not currently meet the requirement of numerosity.

2.    *Rule 23(a)(2): Commonality*

The second requirement under Rule 23(a) is that the plaintiff must show that "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  Claims of individual class members may be common if they arise from a "common nucleus of operative fact," which is usually satisfied where the defendant engaged in standardized conduct towards members of the proposed class.  *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998).  Class certification cannot

---

[3] Additionally, while the Court makes no finding as to the merits of Mr. Lace's Indiana Wage Payment Statute claim, as discussed above it appears that Mr. Lace's claim under that law may be barred by the plain language of that statute, which limits suits for recovery to those who "voluntarily" leave their employment.  Ind. Code § 22-2-5-1.  Therefore, based on the definition of the Proposed Subclass, there is a real possibility that the number of members of the Proposed Subclass is zero.

be defeated simply because there are some factual variances among the proposed members. *Rosario v. Livaditis*, 963 F.2d 1013, 1017 (7th Cir. 1992); *see Dukes*, 131 S. Ct. at 2556 ("We consider dissimilarities not in order to determine (as Rule 23(b)(3) requires) whether common questions *predominate*, but in order to determine (as Rule 23(a)(2) requires) whether there *is* '[e]ven a single [common] question.'" (emphasis in original)).

With respect to the Proposed Class, Mr. Lace argues that virtually all of the issues related to WARN Act liability are common to the class, including questions regarding who employed the class members (Fortis alone or Fortis and Monomoy), whether the closing of the South Bend Facility consisted of a mass layoff of plant closing, and whether notice was provided to the former employees at the South Bend Facility. [DE 35 at 8.] In its response, Fortis combines its discussions of commonality and typicality into one combined discussion. [DE 43 at 6–8.] The Court considers this portion of Fortis's response to address typicality and those considerations will be discussed below.

The Court agrees with Mr. Lace that there are questions of law and fact common to the Proposed Class. The very nature of WARN Act litigation indicates the presence of a single large employment event that affects a number of individual employees. The question of whether that event implicates the protections of the WARN Act and whether proper notice was given are common to the Proposed Class. Additionally, the question of the relationship between Fortis and Monomoy, which is central to Mr. Lace's Amended Complaint, is common to the Proposed Class. Accordingly, the requirement of commonality is established with respect to the Proposed Class.

With respect to the Proposed Subclass, Mr. Lace also argues that the issues needed to determine liability under the Indiana Wage Payment Statute are common to the Proposed Subclass. These common issues include "whether Plaintiff and all members of the Subclass are

protected by the Indiana Wage Payment Law" and "whether Plaintiff and the Subclass were owed compensation for unused accrued vacation time when they were terminated." [DE 35 at 7–8.] The Court agrees that these would be common issues to the Proposed Subclass. Accordingly, the requirement of commonality is established with respect to the Proposed Subclass.

### 3. *Rule 23(a)(3): Typicality*

The third requirements under Rule 23(a) is that the plaintiff must show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). A claim is typical if it "arises from the same event or practice or course of conduct that gives rise to the claims of other class members and . . . are based on the same legal theory." *Rosario*, 963 F.2d at 1018. Even though some factual variations may not defeat typicality, the requirement is meant to ensure that the named representative's claims have the same essential characteristics as the claims of the class at large. *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006).

With respect to the Proposed Class, Mr. Lace argues that he was injured in the same manner as the other members of the Proposed Class, in that he did not receive the required notice under the WARN Act, or the back pay or benefits he was due under that statute. [DE 35 at 7.] To support his reply brief, Mr. Lace also filed an affidavit in which he believes "the circumstances of [his] termination are the same as those of the other former employees [at the South Bend Facility]." [DE 48-2 at 2.]

In its response, Fortis agrees that Mr. Lace "alleges a shared grievance between himself and the potential class members (that they allegedly lost their jobs on the same day as a result of the closing of the same facility)." [DE 43 at 6.] Fortis argues, however, that unique defenses can

bear on the typicality of class claims. *Id.* Fortis further states "Fortis has not yet completed discovery regarding whether such unique defenses exist." *Id.*

It is true that a defense unique to the named plaintiff which will be a major focus of the litigation bears on the typicality of the named plaintiff. *Koos v. First Nat'l Bank of Peoria*, 496 F.2d 1162, 1164 (7th Cir. 1974). However, Fortis has identified no such unique defense and the Court cannot at this time identify any defense that would apply specifically to Mr. Lace while not applying to the other members of the Proposed Class. The defenses available to an employer in WARN Act litigation focus on the actions of the employer, rather than those of the employees. See 29 U.S.C. § 2102(b)(1) (defense if employer was actively seeking capital to avoid or postpone the shutdown), § 2102(b)(2) (defense if plant closing or mass layoff was caused by unforeseeable business circumstances).

Accordingly, it appears that Mr. Lace's claims are typical of the Proposed Class, in that each of those claims arises from the decision to close the South Bend Facility and is based on the same legal theory of a violation of the WARN Act. Therefore, typicality is established with respect to the Proposed Class.

With respect to the Proposed Subclass, typicality is not yet established. Under Indiana law, in order to make a claim for wages due after termination of employment, a worker must file a claim with the Indiana Department of Labor. Ind. Code § 22-2-9-4; *Steele*, 776 N.E.2d at 703. Only after such a claim has been filed can the Attorney General, or a private attorney to whom the claim has been referred by the Attorney General, institute an action for recovery of wages. *Id.* There is no evidence in the record, at the moment, as to whether Mr. Lace or any of the other affected employees completed any administrative remedies with the Indiana Department of Labor. It is possible that some, but not all, have filed such claims. In light of the lack of evidence, the Court cannot determine that Mr. Lace's claims are typical of the class.

4.     *Rule 23(a)(4): Adequacy of Representation*

The final requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequacy of representation is composed of two parts: "the adequacy of the named plaintiff's counsel, and the adequacy of representation provided in protecting the different, separate, and distinct interest" of the class members. *Retired Chicago Police Ass'n v. City of Chi.*, 7 F.3d 584, 598 (7th Cir. 1993). "A class is not fairly and adequately represented if class members have antagonistic or conflicting claims." *Rosario*, 963 F.2d at 1018. Also, counsel for the named plaintiffs must be experienced and qualified and generally be able to conduct the litigation. *See Eggleston v. Chi. Journeymen Plumbers' Local Union No. 130*, 657 F.2d 890, 896 (7th Cir. 1981).

With respect to the adequacy of Mr. Lace personally, Fortis objects that Mr. Lace has not made a sufficient showing of his adequacy and states that Fortis has propounded discovery requests attempting to help establish the inadequacy of Mr. Lace. [DE 43 at 8.] With respect to the discovery requests, which were attached as exhibits to Mr. Lace's reply [DE 48-1 at 6–15], the information related to Mr. Lace specifically seems to be the type of documentation which would have already been in Fortis's possession. Additionally, Mr. Lace filed an affidavit accompanying his reply brief which states that the circumstances surrounding his termination were the same as the other members of the Proposed Class, and that he is "eager and willing to prosecute this action." [DE 48-2 at 2.]

Based on this evidence, the Court finds that Mr. Lace is adequate to represent the interests of the Proposed Class. The claims of Mr. Lace are identical to those of the other members of the Proposed Class and there is no evidence of any unique defense or circumstance that would cause conflict between Mr. Lace and the other members of the Proposed Class. To

the extent that Fortis argues that some future discovery will demonstrate Mr. Lace's inadequacy to represent the Proposed Class, the Court retains jurisdiction to decertify or modify the class as appropriate. Fed. R. Civ. P. 23(c)(1)(C); *Butler v. Sears, Roebuck & Co.*, Nos. 11-8029, 12-8030, 2013 WL 4478200, at *1 (7th Cir. Aug. 22, 2013) ("rulings on certification in class action suits are tentative and can be revisited by the district court as changed circumstances require"); *Johnson v. Meriter Health Servs. Emp. Ret. Plan*, 702 F.3d 364, 370 (7th Cir. 2012) (district court correct to rule that class could be decertified if circumstances change).

With respect to the Proposed Subclass, the issue of whether or not Mr. Lace filed the necessary administrative claims with the Indiana Department of Labor affects the adequacy of his representation of the Proposed Subclass. In light of the little evidence presented regarding this claim and the claims of the other members of the Proposed Subclass, Mr. Lace has not met his burden of establishing that Mr. Lace's claim will not be antagonizing or conflicting to other members' potential claims. Accordingly, the Court does not find that Mr. Lace can adequately represent the Proposed Subclass.

With respect to the adequacy of class counsel, Fortis does not appear to directly challenge the qualifications of Harwood Feffer or Anderson, Agostino & Keller, though Fortis's discovery requests do seek information about the firms' interactions with Mr. Lace. [DE 48-1 at 6–15.] In support of the adequacy of class counsel, Mr. Lace submitted declarations from each of the two firms, outlining their qualifications and credentials. [DE 34-1, 34-2, 34-3.] Notably, both firms have been appointed as counsel in complex litigation within this district. The Court is satisfied that both firms will be adequate to represent the interests of the Proposed Class.

Based on the information above, adequacy of representation has been established with respect to the Proposed Class, but not with respect to the Proposed Subclass.

5. *Summary of the Rule 23(a) Factors*

In order to certify a class, a proposed class must meet each of the four Rule 23(a) factors. As discussed above, the Court finds that the Proposed Class does meet each of the Rule 23(a) factors. Accordingly, the Court will determine below whether the Proposed Class meets any of the Rule 23(b) factors, only one of which is required for certification. Mr. Lace moves that the Proposed Class be certified under both Rule 23(b)(2) and Rule 23(b)(3), each of which is discussed below.

However, the Proposed Subclass does not meet each of the Rule 23(a) factors, in that Mr. Lace has failed in his burden to establish the numerosity and typicality of the Proposed Subclass and that he is an adequate representative of the Proposed Subclass. Accordingly, the Court will not consider, and expresses no opinion as to, whether the Proposed Subclass meets the Rule 23(b) factors.

6. *Rule 23(b)(2): Common Grounds for Injunctive and Declaratory Relief*

Mr. Lace requests that his prayer for declaratory relief be certified under Rule 23(b)(2). Rule 23(b)(2) covers cases where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." *See Lemon v. Int'l Union of Operating Eng'rs, Local No. 139, AFL-CIO*, 216 F.3d 577, 580–81 (7th Cir. 2000) (noting that Rule 23(b)(2) certification does not ensure personal notice or an opportunity to opt out even if some or all of the plaintiffs pray for monetary damages). Where a class seeks monetary relief, certification under Rule 23(b)(2) is impermissible unless "the requested monetary damages are 'incidental' to requested injunctive or declaratory relief." *Lemon*, 216 F.3d at 581. Otherwise,

the failure to provide notice and the ability to opt-out violates the due-process rights of the non-named class members. *Dukes*, 131 S. Ct. at 2559.

In this case, though Mr. Lace requests declaratory relief, the purpose of that declaratory relief is only to ensure the obtainment of individual money damages allegedly due him and the other members of the Proposed Class under the WARN Act. The Supreme Court has clearly ruled that claims predominantly requesting individual monetary awards do not belong in Rule 23(b)(2). *Dukes*, 131 S. Ct. at 2557–60. Though Fortis did not respond to the request to certify the request for declaratory relief under Rule 23(b)(2), the Court finds that the Proposed Class's claims are not suitable for certification under Rule 23(b)(2).

7.    *Rule 23(b)(3): Predominance of Common Questions and Superiority of Class Determination*

Mr. Lace also requests that the Proposed Class be certified under Rule 23(b)(3). Rule 23(b)(3) allows for certification if the Court finds "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." The predominance requirement is satisfied when "common questions represent a significant aspect of [a] case and . . . can be resolved for all members of [a] class in a single adjudication." *Messner*, 669 F.3d at 815 (alterations in original) (citing Wright & Miller, *Federal Practice & Procedure* § 1778 (3d ed. 2011)). The analysis "begins, of course, with the elements of the underlying cause of action." *Id.* (citing *Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179, 2184 (2011)). Class certification can be appropriate, even if there are individual damages for class members "if there are substantial common issues that outweigh the single variable of damage amounts." *Arreola*, 546 F.3d at 801.

In this case, many of the elements of Mr. Lace's WARN Act claim are susceptible to resolution on a class wide basis. Those issues include: (1) whether Fortis and Monomoy constitute a "single employer" of the employees at the South Bend Facility, (2) whether the employer of the Proposed Class was subject to the WARN Act, (3) whether the closing of the South Bend Facility constituted a mass layoff or plant closing, and (4) if required, whether Fortis and/or Monomoy provided notice under the WARN Act of the closing of the South Bend Facility. Each of these elements will affect the members of the Proposed Class equally, without need for individualized proof. Such issues go to the heart of Mr. Lace's WARN Act claim and predominate over any individualized issues.

Fortis argues that factual issues can override common legal questions and that it is possible that there will be such individual factual issues in this case. [DE 43 at 10–11.] As examples, Fortis notes that Mr. Lace has failed to put forward "any factual allegations concerning Plaintiff's job function (or that of any class member for that matter), duties, compensation, responsibilities, benefits, hours, [and] performance histories." [DE 43 at 11.] The Court agrees with Mr. Lace that these issues are not relevant to Mr. Lace's WARN Act claim. Even assuming for the sake of argument that they have some probative value, these issues certainly will not predominate over the suit.

If Mr. Lace succeeds on his WARN Act claim, there may be a need to determine the amount of individual damages suffered by members of the Proposed Class. This, however, is not sufficient to defeat certification under Rule 23(b)(3). The WARN Act provides for readily calculable back pay damages based on an employee's prior rate of pay, which should readily be discoverable from Fortis's own files. 29 U.S.C. § 2104. The cost of medical expenses incurred,

which would have otherwise been covered, would require a more individualized treatment, but the Court does not believe the issue is great enough to deter certification under Rule 23(b)(3).

The Court also agrees with Mr. Lace that a single class action is superior in this case to a number of individual actions.  In determining whether a class action is superior, Rule 23 includes, as pertinent issues:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)–(D).  Here, several of these considerations work in favor of the superiority of this case as a class action.  The individual members of the Proposed Class likely have little interest in individually prosecuting WARN Act claims, due to the expense required and minimal individual recovery.  It is desirable to consolidate the claims against Fortis in this district, where Fortis had its base of operations and where many documents and witnesses are likely to be located.  Finally, class treatment is more efficient as multiple individual actions would increase expense to the litigants, especially if multiple actions required multiple, concurrent tracts of discovery.

Accordingly, the Court finds that the Proposed Class meets the requirements of Rule 23(b)(3).

8.      *Class Definition*

Though the Court is satisfied that the Proposed Class meets each of the elements of Rule 23(a) and is suitable for certification under Rule 23(b)(3), the Court is concerned that the definition of the Proposed Class, as proposed by Mr. Lace, is not sufficiently definite.  Mr. Lace proposes the definition as follows:

> All persons who worked at or reported to defendants' South Bend Facility and
> were terminated without cause on or about December 1, 2011, within 30 days of
> December 1, 2011, or in anticipation of, or as the foreseeable consequence of, the
> plant closing ordered by defendants on or about December 1, 2011, and who are
> affected employees within the meaning of 29 U.S.C. § 2101(a)(5), and who have
> not filed a timely request to opt-out of the class.

[DE 35 at 2.]

The Court notes that to determine who was fired "in anticipation of, or as the foreseeable consequence of, the plant closing" would require insight into the mind of whoever made the decision to fire the individual workers, be it Fortis and/or Monomoy.  The Court believes the better action is to identify the class of people to whom notice would have been required under the WARN Act, if applicable in this case.  That approach captures the entire universe of those potentially harmed, while providing a presently identifiable class of individuals to whom notice should be served.

The time for determining who was due notice was sixty days prior to the closing of the South Bend Facility.  Accordingly the Court will rewrite the definition of the Proposed Class as:

> Any and all persons who worked at or reported to the facility located at 3615
> Voorde Drive, South Bend, Indiana, on the date sixty days prior to the closing of
> that facility.

*See Messner*, 669 F.3d at 826 n.15 ("In circumstances such as these, involving minor overbreadth problems that do not call into question the validity of the class as a whole, the better course is not to deny class certification entirely but to amend the class definition as needed to correct for the overbreadth."); 32B Am. Jur. 2d *Federal Courts* § 1600 (2013) ("As the basic responsibility for determining the extent of class membership falls upon the trial judge, the judge must try to keep the class feature of the litigation within reasonably manageable proportions and bounds and should have a range of discretion in such connection in order to expedite the trial. Thus, the court may construct a definition of the class.").  The Court incorporates by reference

the discussion of the Rule 23(a) and 23(b) factors above, finding that this definition meets each of the Rule 23(a) factors and is certifiable under Rule 23(b)(3). It further provides a presently identifiable class of individuals potentially entitled to recovery under Mr. Lace's WARN Act claim.

9.     *Fortis's Request for Abeyance*

Finally, the Court addresses Fortis's request that, if the Court finds all of the requirements for class certification satisfied, that the Court afford Fortis "the opportunity to complete class discovery in order to challenge such a determination." [DE 43 at 11.] The Court believes such a request is in conflict with Rule 23's requirement that the Court rule on the class certification motion "at an early practicable time." Fed. R. Civ. P. 23(c)(1)(A). The Court believes there is sufficient evidence at this time to certify the Proposed Class and does not require the need for additional evidence through class discovery.

However, the Court continues to have the power to modify or decertify the class at any time until final judgment. Fed. R. Civ. P. 23(c)(1)(C); *Butler*, 2013 WL 4478200, at *1; *Johnson*, 702 F.3d at 370. Accordingly, if later discovery establishes that one of the Rule 23(a) requirements is no longer satisfied, or that Rule 23(b)(3) certification is no longer proper, the parties should alert the Court through a motion to modify or decertify the class.

10.     *Conclusion and Class Certification*

Because Mr. Lace has demonstrated that certification is appropriate pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3), the Court ORDERS that this case be certified as a class action. The Court certifies a class comprised of any and all persons who worked at or reported to the facility located at 3615 Voorde Drive, South Bend, Indiana, on the date sixty days prior to the closing of that facility. The class may pursue claims for relief under the WARN Act,

29 U.S.C. § 2101. The Court appoints Mr. Lace as representative of this class. Either party may petition the Court for modification of the class definition if subsequent evidence suggests that the class as defined is inappropriate. Fed. R. Civ. P. 23(c)(1)(C).

## C. Appointment Of Class Counsel

Rule 23 requires that a court certifying a class also appoint class counsel. Fed. R. Civ. P. 23(c)(1)(B), (g). Class counsel must fairly and adequately represent the interests of the class. Fed. R. Civ. P. 23(a)(4). In appointing class counsel, the court must consider the following: "the work counsel has done in identifying or investigating potential claims in the action; counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; counsel's knowledge of the applicable law; and the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). The court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

As previously detailed, the Court finds that the attorneys at Harwood Feffer, LLP, and Anderson, Agostino & Keller, P.C., will fairly and adequately represent the interests of the class. These attorneys have reviewed and investigated the potential claims in this case, have experience in handling class action litigation, have knowledge of the law relative to the claims asserted, and have the resources that are necessary to represent the class. Therefore, in compliance with Rule 23(g)(1), and as requested by Mr. Lace, Harwood Feffer, LLP, is appointed as class counsel and Anderson, Agostino & Keller, P.C., is appointed as liaison counsel.

## III.    CONCLUSION

Because Mr. Lace has demonstrated that certification is appropriate pursuant to Fed. R. Civ. P. 23(a) and (b)(3), the Court **GRANTS** in part and **DENYS** in part Mr. Lace's Motion for

Class Certification, [DE 34]; **ORDERS** that this case be certified as a class action with the class defined as stated in Section II.B.8, above; **APPOINTS** Harwood Feffer LLP as class counsel and Anderson, Agostino & Keller, P.C., as liaison counsel; and, **DIRECTS** class counsel to provide notice of this certification to each individual member of the class who can be identified through reasonable effort.

SO ORDERED.

ENTERED:  <u>September 24, 2013</u>

<u>        /s/ JON E. DEGUILIO        </u>
Judge
United States District Court